UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MUKHABBAT NURITDINOVA,            Case No. 1:13-cv-888

    Plaintiff,                                    Beckwith, J.
                                                   Bowman, M.J.
    v.

CINCINNATI CHILDREN'S HOSPITAL,

    Defendant.

**REPORT AND RECOMMENDATION**

On December 4, 2013, Plaintiff filed a motion seeking leave to proceed *in forma pauperis* in filing a *pro se* complaint against her former employer, identified as Cincinnati Children's Hospital ("Cincinnati Children's").[1] Plaintiff's motion was granted, and her complaint was filed. The Court subsequently attempted to obtain counsel for Plaintiff through the Volunteer Lawyers Project, but after no counsel could be found to undertake her case, Plaintiff was informed that she must continue to prosecute her case *pro se*.[2] (*See* Docs. 4-6, 20-22). Discovery closed on November 3, 2014, and Defendant subsequently moved for summary judgment. (Doc. 27). In opposition to Defendant's motion, Plaintiff filed a 22-page, single-spaced typed response, supported by 119 pages of exhibits, to which Defendant filed a reply. (Docs. 34, 35).

On February 12, 2015, Plaintiff filed a "supplemental memorandum" in opposition to Defendant's reply. (Doc. 36). The undersigned declines to consider this document, which is procedurally improper. The Federal Rules of Civil Procedure and the Local

---

[1] Defendant identifies its full name as Cincinnati Children's Hospital Medical Center. (Doc. 9).
[2] Plaintiff refers several times to prior retained counsel. She testified that the prior attorney-client relationship ended when her attorney "refused to work with me." (Doc. 26 at 233).

1

Rules of this Court do not provide for briefs to be filed in support of or in opposition to a motion other than an initial memorandum, response, and reply.  Under rare circumstances in cases in which new argument or evidence is presented for the first time in a reply memorandum, the Court will entertain a motion seeking leave to file a surreply.  However, no new material was presented in Defendant's reply in the instant case, and Plaintiff did not seek leave of court to file an additional brief.

Pursuant to local practice, this matter has been referred to the undersigned magistrate judge for a report and recommendation on the pending motion for summary judgment.  For the reasons set forth herein, Defendant's motion should be **GRANTED** and this case should be dismissed.

### I. Factual Background

Plaintiff alleges that she is a "54 year old Uzebkistani" woman who is a Naturalized American citizen.  The record reflects that Plaintiff was born in Russia and immigrated to the United States more than fifteen years ago, in 1999.  Prior to coming to the United States, Plaintiff worked as a medical doctor in psychiatry in Uzbekistan, but she has never been licensed to practice medicine in the United States.  The Defendant, Cincinnati Children's, is a world class pediatric care facility and research facility, ranked as one of the top three pediatric hospitals in the nation.

Since immigrating to the United States, Plaintiff has worked in a variety of jobs. However, none (prior to the job at issue) have included research with human subjects or significant computer work.  (Doc. 26, Pl. Dep. 26-27, 30, 34-36, 42, 47).  Plaintiff states that she had two significant research experiences in Uzbekistan, but there is no dispute that she had no such experience in the United States, nor did she have experience

dealing with Institutional Review Boards and the type of data entry and record-keeping that they require. (Doc. 26 at 49).

In 2010, Plaintiff began applying for research positions without success. (*Id.* at 229). Plaintiff sought out such positions because she believed that a research position would help her obtain the necessary credentials, including admission to a residency program, in order ultimately to practice medicine in the United States, which was (and continues to be) her career goal. (Doc. 34, Response at 3, "I am probably the only residency applicant who has not lost her hope after 8 consecutive years of unsuccessful residency applications."; *see also* Doc. 26 at 49, testifying that her USMLE scores were below what most residency programs would accept). Unfortunately, her qualifications and experience did not meet the minimum qualifications for the available research positions for which she applied. (Edwards Decl. ¶7).

In 2012, Plaintiff was working as a contract interpreter at Cincinnati Children's. One of the researchers for whom Plaintiff provided interpretive services, Dr. Sonata Jodele, offered to try to help Plaintiff obtain a research coordinator position. (Doc. 26 at 51). Plaintiff admitted that she did not have experience for that type of clerical/support position, but wanted to try it anyway. (Doc. 26 at 52, 56 and Ex. 4; *see also* Edwards Decl. ¶7). The interview and hiring process took several months. (Doc. 26 at 53). Plaintiff understood that she was given the chance to interview based on Dr. Jodele's recommendation, and that there were concerns whether her experience matched the job requirements. (Doc. 26 at 55-56). Persuaded that Plaintiff should be provided a chance to prove herself and gain experience and training, Cincinnati Children's created a *temporary* "Clinical Research Coordinator II" ("CRC II") position for Plaintiff in the bone marrow transplantation department where Dr. Jodele worked. (Doc. 26 at 58, testifying

3

that Susan Laupola told her she was creating a temporary position just for Plaintiff). Plaintiff's direct supervisor was Stephanie Edwards, the Clinical Research Manager. Plaintiff understood that the position was classified as temporary. (Doc. 26 at. 60; *see also* Doc. 34-1 at 13, email from Plaintiff to Sonata Jodele dated 7/4/12: "Ms. Laupola explained it is going to be a temporary position, [without]…benefits. They will give me benefits, if they decide to keep me. She said they will see how it goes, and then consider it. I understand."). Plaintiff alleges in her complaint and argues in her response that Stephanie Edwards "promised permanent position if I will do well as a temporary worker." (Doc. 1-1 at 5). However, Plaintiff testified in her deposition that no one promised that the position would become permanent – the alleged "promise" was a vague and conditional "we will see" verbally provided in response to Plaintiff's inquiry about a permanent position. (Doc. 26 at 60-61, 244).

The Clinical Research Coordinator assists in coordinating the research studies and ensuring the necessary documentation is completed. The position requires high clerical accuracy, high attention to detail, strong organizational skills, computer literacy, and working knowledge of software applications, including Excel spreadsheet and database functions. (Edwards Decl. ¶7).

Plaintiff began working on August 27, 2012. She met weekly with Teresa Latham, the training coordinator, and twice weekly with Stephanie Edwards to learn the process. (Doc. 26 at 71). Plaintiff also shadowed Jamie Wilhelm, an experienced Clinical Research Coordinator IV, and Rebekah Kennedy. (Doc. 26 at 80; Edwards Decl. ¶9). Edwards went over things multiple times with Plaintiff. (Doc. 26 at 75). Edwards tried to help Plaintiff with mistakes Plaintiff was making. (*Id.* at 76-77). Plaintiff had trouble on at least one occasion finding the study forms on the computer. (*Id.* at

4

81-82). She also temporarily lost her Excel file on her computer. (*Id.* at 82). Edwards made a checklist to help Plaintiff with the training process, and Plaintiff was also allowed to retake one of the training tests. (*Id.* at 77, 158).

As the end of the three-month temporary position neared, Edwards concluded that Plaintiff's skill set did not match what the position required. (Edwards Decl. ¶12). Plaintiff was not catching on to the basics of the job and Edwards found herself having to repeat information. (*Id.* at ¶10; Doc. 26 at 75). Plaintiff's computer skills were also not at the requisite level. (*Id.* at ¶12; Doc. 26 at 81-82). Plaintiff appeared to be more interested in the research being conducted than in the clerical CRC role.[3] Edwards counseled Plaintiff that she needed to focus on the coordinator job rather than trying to learn Dr. Jodele's role. (Edwards Decl. ¶11).

Around the same time period, Plaintiff sought out Dr. Jodele because she thought that she was going to be let go. (Doc. 26 at 64). Dr. Jodele told Plaintiff that her skills were not matching the job requirements. (*Id.* at 150). Dr. Jodele also stated that she (Jodele) too would have a hard time performing the coordinator position, since it is difficult when one's background is as a medical doctor. (*Id.* at 69). Plaintiff told Dr. Jodele that she thought she could do it with more time and practice. (*Id.* at 162; Ex. 14).

On November 12, 2012, Plaintiff met with Stephanie Edwards and Edwards' supervisor, Susan Laupola, in Laupola's office. They confirmed to Plaintiff what she already suspected – that they would not offer her a regular permanent position at the expiration of her temporary position, because it was not working out. (*Id.* at 137, 139, 142). Plaintiff testified that Laupola told her that the temporary position was ending and

---

[3]Plaintiff states in her response that she "was hoping that someday, I will be promoted and become Principal Investigator, since I am a scientist and succeeded in completing and defending thesis of my Doctorate Dissertation in Medicine in 1995." (Doc. 34 at 20).

5

that she was "overqualified." She was never provided with any other explanation for the termination of her temporary employment. (*Id.* at 167, Doc. 26-1 at Exh. 15). The next day, Plaintiff wrote an email to Melissa Arrington in which she stated that she knew she was not the ideal candidate and stated, "I strongly believe that I have not done my best for CC." (Doc. 34-1).

Plaintiff filed an EEOC charge on September 5, 2013, which the EEOC dismissed five days later, on September 10, 2013. Plaintiff's EEOC charge alleges that Cincinnati Children's denied her a permanent position, promotion, training, benefits, and a 3-month formal evaluation based upon national origin and age discrimination. Plaintiff also alleges that she was harassed and subjected to a hostile work environment prior to her November 12, 2012 discharge. Last, Plaintiff alleged retaliation. (Doc. 1-2 at 1).

Plaintiff's complaint in this Court similarly alleges employment discrimination in the Defendant's failure to hire her for a permanent position, failure to provide her a formal evaluation at the end of her 3-month position, and termination. However, Plaintiff does not claim retaliation in her federal suit. (Doc. 26 at 171).

**II. Analysis**

**A. Summary Judgment Standard**

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P.

56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.* Applying the relevant legal standards, it is clear that Defendant is entitled to judgment as a matter of law.

### B. Defendant's Motion

#### 1. Statute of Limitations

Defendant first argues that Plaintiff's claims are barred by the statute of limitations, to the extent that she is attempting to claim "failure to hire" discrimination based upon the Defendant's failure to place her in a "permanent" Research Coordinator position rather than a "temporary" position when she was hired in the summer of 2012. (Dep. 172). Plaintiff did not file her EEOC charge until September 5, 2013, more than 300 days after the decision was made to hire her into a "temporary" position.

In her response, Plaintiff argues that her claim should not be time-barred because she relied upon the Defendant's "promise" that it would hire her into a permanent position so long as she met certain requirements. However, Defendant has offered ample evidence that there was no binding "promise" to hire Plaintiff into anything but a temporary position that was created specifically for Plaintiff based on Defendant's concern that Plaintiff might not have the skill set to succeed in a permanent CRC position. Not only does Plaintiff fail to provide any evidence to dispute the evidence offered by Defendant in this regard, but Plaintiff's own testimony and exhibits confirm the same understanding. (*See, e.g.*, Doc. 26 at 60-61, 244).

Thus, any claims based upon the Defendant's initial hiring decision are barred as a matter of law by the statute of limitations. *See* 29 U.S.C. §626(d)(1)(B)(a plaintiff seeking redress under the ADEA must file a charge with the EEOC within 300 days of

7

the alleged unlawful practice); 42 U.S.C. §2000e-5(e)(1)(setting forth the same 300 day limit as to national origin discrimination). On the other hand, to the extent that Plaintiff claims that the Defendant discriminated against her when it informed her that her temporary position would end without her being hired into a permanent position, her claim is not time-barred.

### 2. Failure to Establish Discrimination

Defendant persuasively argues that to the extent that Plaintiff's claims are not barred by the statute of limitations, it is still entitled to summary judgment based upon the lack of any evidence of discriminatory animus based upon Plaintiff's national origin or age. Alternatively, Defendant is entitled to judgment based on its production of a non-discriminatory reason for discontinuing Plaintiff's temporary position, and Plaintiff's failure to show pretext.

#### a. Plaintiff's Admission that Decision-maker did not Discriminate

Plaintiff admits that she has no direct evidence of discrimination. While a plaintiff may provide national origin discrimination through circumstantial evidence, consistent with the familiar *McDonnell Douglas* burden-shirting framework, in this case Plaintiff fails to present even <u>indirect</u> evidence to support her claim. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). For example, Plaintiff testified that neither Stephanie Edwards nor Teresa Latham, the two people who provided direct supervision and training, ever did or said anything that Plaintiff perceived as discriminatory against Plaintiff on the basis of her age or national origin. (Doc. 26 at 74-75).

Defendant's motion should be granted based upon Plaintiff's admission that no decision-maker discriminated against her. There is no dispute that Plaintiff was hired by

8

Stephanie Edwards into a temporary position. It was Edwards alone who made the decision not to hire Plaintiff into a permanent position when the temporary position ended. (Edwards Decl. ¶12). The undersigned agrees with Defendant that investing nearly three months of paid time and training for Plaintiff, only to fire her based upon her age and national origin, "makes no sense." (Doc. 27 at 9). Because Edwards was the sole decision-maker for both hiring and termination decisions in a short period of time, the "same-actor inference" provides "strong evidence that there was no discrimination involved in the later termination." See *Wofford v. Middletown Tube Works, Inc.*, 67 Fed. Appx. 312, 318 (6th Cir. 2003)(citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003)(*en banc*)). Plaintiff also admits that no other supervisor or trainer, including Laupola, Dr. Jodele, Teresa Latham, or Jamie Wilhelm, ever did or said anything that was discriminatory because of her national origin or age. (Doc. 26 at 67, 69, 74, 75, 81).

Because there is no evidence at all that any supervisor or decision-maker discriminated against Plaintiff in any manner, Defendant is entitled to summary judgment on Plaintiff's claims. Plaintiff's reliance on nothing more than speculation and conjecture to support her assertions of discrimination is not sufficient to proceed to trial. *See Snyder v. Pierre's French Ice Cream Co.*, 589 Fed. Appx. 767, 771 (6th Cir. 2014)(personal belief, conjecture and speculation are insufficient to support inference of discrimination); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)(mere speculation ungrounded in fact is insufficient to defeat summary judgment). Aside from Plaintiff's inability to produce any evidence at all to support her assumptions, the record reflects that some of those assumptions were clearly based on factual errors. For example, Plaintiff questioned Susan Laupola's motives by claiming that Laupola did not

9

think she was qualified "just because I am older than her." (Doc. 34). However, Laupola, age 57, is older than Plaintiff. (Laupola Decl. ¶2).

### b. Circumstantial Evidence of Co-worker Bias Insufficient

Although she alleges no discriminatory animus by a supervisor or decision-maker, Plaintiff does allege that a co-worker, Michelle Spaulding, exhibited discriminatory bias against her by making one or more comments about her not eating pork, which Plaintiff attributes to discrimination against her cultural traditions as an Uzbek woman. Plaintiff testified that the vast majority of native Uzbekistans do not eat pork out of national/religious tradition, even if they are not practicing Muslims. (Doc. 26 at 95-96). Plaintiff is a Christian but still believes eating pork is a sin. (*Id.*).

On a second occasion, Plaintiff alleges that Spaulding publicly humiliated Plaintiff by asking her to smell her feet, though Plaintiff does not explain how that incident relates to discriminatory animus. Plaintiff testified about a third incident in which another co-worker, Rebecca Kennedy, received a gift of dog food from her co-workers (including Plaintiff), and publicly offered Plaintiff some to try. When Plaintiff later confronted her and told her she was offended, Kennedy apologized. (Doc. 34 at 6). Last, Plaintiff complains of an incident of "public social isolation" at a nursing conference when she approached a group of coworkers at breakfast, but they left the table "as soon as I put my plate on it." Plaintiff alleges that the same group "didn't want to talk to me later" on the same day. (*Id.*).

Other than possibly the "pork" comment(s), the undersigned does not perceive – and Plaintiff fails to explain - how the referenced incidents provide the slightest circumstantial evidence of illegal discrimination. Not every incident of "social isolation" arises from illegal bias based on national origin or age discrimination; some evidence of

10

discriminatory animus is required. Plaintiff has offered none. As Defendant points out in its reply, the "handful of perceived slights from co-workers" also are insufficiently severe and pervasive to make out a hostile work environment claim as a matter of law. (Doc. 35 at 2-3).

Plaintiff admits that she never complained to human resources about Spaulding or anyone else. (Doc. 26 at 109). Plaintiff testified that she informed Edwards of some of the referenced interpersonal conflicts, but never raised the issue of discrimination. Plaintiff's admission that she failed to tell anyone at Cincinnati Children's that she thought she was being discriminated against or harassed provides additional grounds to relieve her employer from liability. (*Id.* at 109, 134); *see generally Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 332 (6th Cir. 2008)(employer not liable for co-worker harassment absent evidence that it knew or should have known of the harassment and failed to implement prompt and appropriate corrective action). Moreover, Spaulding left on maternity leave the first week of October 2012, more than 300 days prior to Plaintiff filing a charge of discrimination. Thus, to the extent that Plaintiff's claim is based upon some theory of hostile work environment based upon Spaulding's conduct, that claim would be time-barred.

### c. Evidence That Plaintiff Was Not Qualified

Under the *McDonnell Douglas* framework, a plaintiff must show that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class, or alternatively, was treated less favorably than a similarly-situated individual outside the protected class. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). As further grounds for judgment in its favor, Defendant argues

Plaintiff cannot show that she was qualified, or that a "similarly situated" individual received better treatment.

Defendant argues that Plaintiff cannot show that she was qualified for a permanent Clinical Research Coordinator position, because the minimum qualification for the CRC II position is one to three years of related experience, which Plaintiff admits she did not possess. (Doc. 26 at 176-177). Plaintiff also failed to establish that she became qualified through her temporary on-the-job experience. *See Carr v. Murphy Oil USA Inc.*, 269 Fed. Appx. 378, 378-379 (5th Cir. 2008)(affirming summary judgment where plaintiff failed to establish he was qualified because he did not show sufficient progress during on-the-job training period and multiple supervisors thought he had trouble grasping knowledge necessary to perform the position).

In her response in opposition, Plaintiff claims that she was qualified, based upon her own interpretation of her skill set *vis a vis* the published list of "Required Skills" for the CRC position. (*See* Doc. 34 at 8-9). With respect to the requirement of at least an "Associate's Degree in a related field and 1-3 years related experience," Plaintiff contends that in addition to her PhD and M.D. from Uzbekistan,[4] she met the requisite "1-3 years" minimum experienced based on her long-ago post-graduate research work in Uzbekistan. However, Plaintiff cannot defeat Defendant's motion by presenting argument that contradicts her own prior sworn deposition testimony that she did not possess the relevant experience. (Doc. 26 at 176-177). Plaintiff also claims in her response that her computer skills were excellent. She asserts that her supervisors were overly and unfairly critical of her skills, focusing on minor errors such as being unable to

---

[4] While the differences are irrelevant for purposes of the pending motion, Plaintiff concedes that her PhD "is not the same degree as [an] American PhD." (Doc. 34 at 14, ¶9).

12

locate a particular Excel file early in her training. Plaintiff contends that her supervisors unfairly stopped providing her with training shortly before her termination.

Plaintiff's subjective belief that she performed well, or that she could have performed well in the future with more experience and training, is irrelevant. *See Hedrick v. Western Reserve Case Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)(Plaintiff's "subjective view of her qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination."). Nothing in Plaintiff's response is sufficient to defeat summary judgment. The record reflects that Plaintiff made mistakes and required more meetings and trainings than did other employees. (Doc. 26 at 76-77; Edwards Decl. ¶10). Defendant has offered evidence that Plaintiff did not progress to the level required to attain a permanent position. (Edwards Decl. ¶10; Latham Decl. ¶¶2-4). It is not the role of this Court to second-guess the Defendant's legitimate exercise of its business judgment, where there is no evidence whatsoever that the Defendant's decision was colored by illegal discriminatory animus. The Sixth Circuit uses a modified "business judgment" or "honest belief" rule, whereby a court will permit an employer to "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Technical College*, 698 F.3d 275, 286 (6th Cir. 2012)(quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)(additional internal quotation marks and citation omitted).

Plaintiff also presents an argument that Cincinnati Children's failed to follow a number of its own policies, and that Defendant's failure to comply with those policies constitutes evidence of discrimination. Plaintiff attaches as exhibits to her response a number of exhibits she claims are "policies" that were not properly followed. However, Plaintiff's copies of Defendants' alleged "policies" are not properly authenticated

evidence in the record. (*See* Doc. 34 at 15-16, citing attached copies of policies requiring an Orientation Checklist, formal periodic performance reviews, successive discipline including written warning/suspensions and Performance Improvement Plans, formal termination procedures, and conflict resolution and grievance rights). Additionally, as Defendant points out, the majority of the policies on which Plaintiff relies do not appear to apply to *temporary* employees. The policies contain disclaimers that they are not contracts, and may be changed at any time. Given the lack of record evidence and multiple other deficiencies, Plaintiff has not shown that Defendant failed to comply with any of its policies. Finally, while proof of an employer's failure to follow internal guidelines may be relevant to the issue of discrimination or pretext in some cases, Plaintiff's conclusory allegations are insufficient to overcome the strong evidence presented by Defendant in this case. *Accord, Hatcher v. General Electric*, 208 F.3d 213 (6th Cir. 2000)(Table, text available at 2000 WL 245515).

It is unclear whether Plaintiff is attempting to present a new claim that she was denied positions because of her national origin or age discrimination *after* her termination on November 12, 2012. To the extent that such a claim is presented herein, it has not been administratively exhausted. Plaintiff's EEOC charge alleged discrimination on November 12, 2012, and Plaintiff has expressly disavowed any subsequent "retaliation" claim in this federal case.[5]

If Plaintiff instead is claiming that three similarly situated women were treated more favorably by being hired into permanent CRC positions during Plaintiff's temporary employment, Plaintiff still fails to overcome Defendant's contrary evidence. Plaintiff

---

[5]The record reflects that Cincinnati Children's did hire Plaintiff for a position in Linguistic Services following the termination of her CRC II position. Plaintiff was subsequently terminated from that position after she violated a policy by contacting a patient for whom she was providing interpreter services outside the direction of the doctor. (Doc. 26 at 254, 257).

asserts that the three were all younger native-born Americans. "They were all Americans; it means that they value Americans and are prejudiced towards me, a Uzbek American." (Doc. 34 at 11). However, the Defendant has offered evidence that the referenced three women hired close in time to November 12, 2012 were not similarly situated. All three had prior clerical support and/or clinical research coordinator experience. (Laupola Decl. ¶8). Presumably because of that prior relevant experience, there is no indication that any of the three were initially placed on any type of probationary plan or into a temporary position. Plaintiff also cannot point to any other doctors who performed CRC duties. "[T]he plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, Inc., 188 F.3d 652, 659 (6th Cir. 1999)(quoting *Mitchell*, 964 F.2d at 583).

### 3. Legitimate Non-Pretextual Basis for Termination

As a final basis for summary judgment, Defendant argues that Plaintiff cannot overcome the legitimate, non-discriminatory reasons offered by Defendant for letting Plaintiff's temporary position expire without offering her a permanent position. The undersigned agrees that Defendant has come forward with nondiscriminatory reasons for its decision, and Plaintiff has not carried her burden to show that those stated reasons were pretextual.

Of course, this additional inquiry is unnecessary to the extent that no prima facie case has been established. It is only when a plaintiff has established her prima facie case that the burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the adverse action taken. *Wright v. Murray Guard, Inc.*, 455 F.3d at 706 (citing *Burdine v. Texas Dept. of Community Affairs*, 450 U.S. 248, 253 (1981)). If the employer meets that burden, then "the presumption of discrimination

created by the prima facie case falls away…and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'" *Id.*, at 706-707 (internal citations omitted); *see also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

So long as the employer "reasonably relied on the particularized facts then before it, [the Court does] not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Here, there is no dispute that Defendant had serious reservations about whether Plaintiff's skill set matched the clerical support position into which she was being hired. Those reservations led the Defendant to create a temporary position for Plaintiff rather than immediately hiring her into a permanent CRC position for which she admittedly lacked the requisite experience. By the time the temporary position was set to expire, Defendant had concluded that its reservations were well-founded, that Plaintiff was "overqualified," and lacked the ability to acquire the appropriate skill set in the time required.

Defendant is entitled to summary judgment, because Plaintiff has failed to show that the reasons given for her termination were not the true reasons, but were instead were a pretext for discrimination. *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times." *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

"To overcome the honest belief rule, the employee 'must allege more than a dispute over the facts upon which [the] discharge was based." *Id.* Instead, she must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.'" *Blizzard,* 698 F.3d at 286 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). Plaintiff's disagreement with Defendant's business judgment "does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Id.* (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)).

In short, Plaintiff's lack of any evidence of pretext illuminates another fatal flaw to her claim. *See Mitchell v. Toledo Hosp.*, 964 F.2d at 584-85 (plaintiff's subjective belief insufficient to maintain claim of race discrimination); *see also In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)(holding that a nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which the nonmovant seeks to rely to create a genuine issue of material fact). Even if Plaintiff believes that Defendants' decision to terminate her was unfair, or overly abrupt, that subjective belief does not translate to proof of an impermissible discriminatory motive. *Accord Burnett v. Carrington Health Systems*, Case No. 1:11-cv-324, R&R filed 11/30/2012, adopted at 2013 WL 1150208 (S.D. Ohio, March 19, 2013)(granting defendant's motion for summary judgment and dismissing case).

### III.  Conclusion and Recommendation

Because there is no genuine issue as to any material fact, the undersigned hereby **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Doc. 27) be **GRANTED.**  Plaintiff's complaint should be dismissed with prejudice, and this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MUKHABBAT NURITDINOVA,                  Case No. 1:13-cv-888

    Plaintiff,                                       Beckwith, J.
                                                Bowman, M.J.

    v.

CINCINNATI CHILDREN'S HOSPITAL,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).